**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JOHN D. CALDERWOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  4:14-CV-00495-CAN |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits.  After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

## BACKGROUND

### I.    PROCEDURAL HISTORY OF THE CASE

On July 28, 2011, John D. Calderwood ("Plaintiff") filed his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), alleging an onset of disability date of December 31, 2008 [TR at 104].  Plaintiff's application was initially denied by notice on December 20, 2011, and again upon reconsideration on April 6, 2012, after which Plaintiff requested a hearing before an administrative law judge ("ALJ").  *Id.* at 106-13, 117-20, 121-23.  The case was transferred, per Plaintiff's request, to Dallas for hearing. *Id.* at 132.  The ALJ conducted a hearing on January 30, 2013, and heard testimony from

Plaintiff, his mother Virginia Mynatt ("Ms. Mynatt"), and the Vocational Expert, Michael F. Gartman ("Mr. Gartman"). *Id.* at 63-103. Plaintiff was represented by counsel at the hearing. *Id.* On March 20, 2013, the ALJ issued his decision denying benefits and found Plaintiff not disabled at step five of the prescribed sequential evaluation process (discussed *infra*). *Id.* at 33, 55-56. On May 3, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision, and on June 4, 2014, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 1-5, 27-28.

On August 1, 2014, Plaintiff filed his Complaint with this Court [Dkt. 1]. Plaintiff filed his Brief on March 17, 2015 [Dkt. 11], and the Commissioner filed her Brief in Support of the Commissioner's Decision on May 1, 2015 [Dkt. 12]. On May 6, 2015, the administrative record was received from the Social Security Administration [Dkt. 13]. On May 12, 2015, Plaintiff filed his Reply [Dkt. 14]. On November 4, 2015, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 18].

## II.     STATEMENT OF RELEVANT FACTS

### 1.     *Age, Education, and Work Experience*

Plaintiff was born on September 22, 1967, making him forty-three years of age at the time of filing his application and forty-six years of age on the date of the Commissioner's final decision [TR at 104]. Plaintiff completed the ninth grade and received his General Education Development ("GED") from El Paso Community College in 1991. *Id.* at 66-67. Plaintiff's past relevant work experience includes a lawn/landscape worker and an Injection-Molding-Machine Tender. *Id.* at 213, 237-38, 442. On January 30, 2013, at the time of the ALJ hearing, Plaintiff reported working part-time for the City of Whitewright to "clean their national parks." *Id.* at 67.

Plaintiff asserts that his onset date of disability is December 31, 2008. *Id.* at 104. Plaintiff has a past history of drug and alcohol abuse, with a sobriety date of June 6, 2009. *Id.* at 67.

### 2. Medical Record Evidence

Plaintiff's medical records contain several differing reports regarding Plaintiff's "mental retardation," "dementia secondary to prior head trauma," and "intellectual disabilities" [TR at 320-24, 450-57, 493-98, 500-13].[1] Indeed, the Court notes at least four separate medical expert reports were presented to the ALJ with conflicting viewpoints regarding Plaintiff's diagnoses relating to his intellectual disability and/or dementia secondary to prior head trauma, and the causes of such deficits, if any, which are summarized herein. *Id.*

### a. Dr. LoPiccolo's Evaluations in 1990–1994

Dr. Philip F. LoPiccolo, M.D. ("Dr. LoPiccolo") completed a Developmental Evaluation Summary dated June 11, 1991 and also provided a follow up file letter dated December 19, 1994. [TR at 320-24]. The Developmental Evaluation Summary and letter were based on three evaluations of Plaintiff on December 4, 1990, December 18, 1990, and January 10, 1991. *Id.* The Developmental Evaluation Summary explains that Plaintiff experiences visual memory deficits, neurologic immaturity, low academic skills, compulsivity, and distractibility. *Id.* at 320-23. The Evaluation further states that such symptoms are consistent with minimal brain dysfunction, suspected subclinical partial-complex seizures, and residual type attention deficit disorder. *Id.* Dr. LoPiccolo prescribed Tegretol following completion of the Evaluation. *Id.* Dr. LoPiccolo's follow up letter indicates that he continued to see Plaintiff regularly for

---

[1] As noted *infra*, at the time of the ALJ hearing the proper terminology in use for Medical Listing 12.05, including subsection C, was "mental retardation" rather than "intellectual disability." Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (to be codified at 20 C.F.R § Pt. 404 and 416); discussed *infra* at p. 18-20. The analysis of an impairment under the Listing is the same both before and after the terminology change. *Id.* For sake of simplicity and clarity, this Court will refer to Medical Listing 12.05 by its current title "Intellectual Disability."

medical monitoring, physical checks, and medical advisement until April 7, 1992, but has not seen Plaintiff since then. *Id.*

### b. *Dr. Pennissi Taylor's Evaluations in February 2010*

Dr. Pennissi Taylor, Ph.D., P.C., Licensed Psychologist ("Dr. Taylor") completed a Neuropsychological Evaluation and a Mental Status Examination (collectively "Dr. Taylor's Evaluations") both dated February 11-12, 2010 [TR at 450-57, 493-98]. Dr. Taylor stated in the Mental Status Examination that Plaintiff has a history of traumatic brain injury including a fall from a bridge in 1999, but no history of closed head injuries (e.g. blow to head with no penetration of skull or brain) or seizures. *Id.* at 493-498. Dr. Taylor further advised that Plaintiff's speech was within normal limits; his though processes, mood and affect, memory, and attention and concentration were good or pretty average; and his insight and judgment were fair. *Id.* at 496-97. Dr. Taylor diagnosed Plaintiff with dementia secondary to head trauma, polysubstance dependence in remission by patient report, and a head injury based on the Diagnostic and Statistical Manual of Mental Disorders IV ("DSM IV"). *Id.* at 497.

The Neuropsychological Evaluation based upon Dr. Taylor's administration of the WAIS-III, a test of cognitive and intellectual functioning, found Plaintiff's IQ scores to be 66 (Verbal), 69 (Performance) and 65 (Full Scale). *Id.* 350-57. Dr. Taylor opined that "it seems that this [IQ score] categorization is a bit of an underestimate of his problem solving ability," "[h]is academic scores were superior to the vast majority of his IQ scores, and again those IQ scores do seem to be an underestimate of his ability to learn and recall information," and "there is no evidence of formal learning disability but there is evidence of cognitive dysfunction." *Id.* Dr. Taylor went on to state that Plaintiff's academic skills fall around grade five and that his true cognitive skills would likely be above the mentally retarded range. *Id.* Dr. Taylor again

diagnosed Plaintiff with dementia secondary to head trauma and polysubstance dependence in remission by patient report. *Id.* Plaintiff was reported in Dr. Taylor's Evaluations to have a Global Assessment of Functioning (GAF) score of 48. *Id.*

### c.    *Richard Isbell's Evaluation in July 2011*

Richard Isbell ("Mr. Isbell"), a physician's assistant provided an Office Visit Report dated July 11, 2011 ("Report"), and a follow up examination report dated July 28, 2011 [TR at 468-74]. The Report states that Plaintiff has a history of "[m]ild MR following head injury in 1999." *Id.* at 468-71. The Report goes on to describe Plaintiff's headaches as moderate to severe and describes that Plaintiff has the following conditions: unspecified psychoderma, mild mental retardation, and abnormal weight gain. *Id.* The follow up examination report includes the same general notations. *Id.* at 472-74.

### d.    *Dr. Susan Posey's Evaluation in November 2011*

Susan Posey, PsyD. ("Dr. Posey") completed a Psychiatric Review Technique report dated November 28, 2011 [TR at 500-31]. Dr. Posey evaluated Plaintiff using a standardized check the box form which included the Standard Social Security Administration Medical Listings. *Id.* Her diagnosis reflects organic mental disorders (Listing 12.02) with notations of dementia secondary to head injury and substance addiction disorders (Listing 12.09) with notations of polysubstance abuse in remission. *Id.* Dr. Posey did not diagnose or annotate Medical Listing 12.05, or any other Medical Listings, and indicated that the "C" Criteria in the Listings were not present. *Id.* Dr. Posey explains in her consultant's notes that "[t]he [claimant] is somewhat limited by dementia. But the impact of these [symptoms] does not wholly compromise the ability to function independently, appropriately, and effectively on a sustained basis." *Id.*

### 3.   Hearing Testimony

#### a.   Plaintiff's Testimony

At the hearing before the ALJ on January 30, 2013, Plaintiff testified that he received a GED from El Paso Community College in 1991, and completed the ninth grade [TR at 66]. Plaintiff reported having a felony criminal and alcohol/drug abuse history that effects his ability to find and maintain a job, but reported that he had been sober since June 6, 2009.  *Id.* at 66-77. Plaintiff indicated that he worked part-time approximately three mornings a week for the City of Whitewright "cleaning their national parks."  *Id.*  Plaintiff further testified that he gets tired easily, has problems with his memory, cannot focus for long periods of time, has headaches that come and go, and has knee pain.  *Id.* at 78-82.  Finally, Plaintiff reported that he was mugged in 2003 and, following the mugging, woke up in Parkland Hospital with no memory of how he got there.  *Id.* at 73.

#### b.   Plaintiff's Mother's Testimony

Plaintiff's mother Ms. Mynatt also testified at the hearing before the ALJ.  *Id.* at 83-93. Ms. Mynatt reported that Plaintiff is impulsive, does things without thinking, and does not handle money well.  *Id.*.  Ms. Mynatt also testified that Plaintiff's mental symptoms have "always been with him, but I think it is worse since the fall off the bridge" in 1999.  *Id.* at 88.

#### c.   Vocational Expert Testimony

Mr. Gartman testified as a vocational expert at the hearing.  *Id.* at 96.  The ALJ asked Mr. Gartman to describe Plaintiff's work history, which he classified into two positions: (1) lawn service worker (which is heavy work with a Special Vocational Preparation ("SVP"))[2] of 4; and

---

[2]SVP is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991).  Using the skill level definitions in 20 C.F.R. § 404.1568 and § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work

(2) Injection-Molding-Machine Tender (which is light work with a SVP of 2). *Id.* at 96-103.

The ALJ then asked Mr. Gartman a hypothetical question incorporating Plaintiff's age, work

history, and education, and asked Mr. Gartman to assume the hypothetical individual was

capable of lifting 50 pounds occasionally and 25 pounds frequently; could stand and walk about

six hours in an eight hour workday; and had occasional postural limitations. *Id.* The ALJ asked

Mr. Gartman if the hypothetical individual could perform Plaintiff's past relevant work, and

Mr. Gartman answered affirmatively that Plaintiff could perform work as an "injection molding

machine operator [sic]." *Id.* Mr. Gartman also answered affirmatively that Plaintiff could

perform his past work as an Injection-Molding-Machine Tender when the ALJ added the

limitations that: (i) Plaintiff is only able to understand, remember, and carry out simple

instructions; (ii) make simple decisions; (iii) attend and concentrate for extended periods; (iv)

interact adequately with coworkers and supervisors; and (v) respond appropriately to changes in

a routine work setting. *Id.* Finally, the ALJ asked a series of hypothetical questions assuming a

full range of sedentary work and adding the limitations that (1) Plaintiff would need to take an

unplanned thirty minute break each day, and (2) Plaintiff has problems focusing and would be

off task at least one hour per day. *Id.* Mr. Gartman indicated that Plaintiff would not be able to

perform a range of sedentary work, or Plaintiff's past work, with each of those limitations. *Id.*

## III.    FINDINGS OF THE ALJ

### 1.    *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the

Commissioner has promulgated regulations that establish a five-step process to determine

whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is

---

corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling
00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2008, the alleged onset of disability date, and any work had been done after that date was not performed at the substantial gainful activity level [TR at 35]. At step two, the ALJ determined that Plaintiff had the severe impairments of mild paraspinal lumbar muscle spasm with low back pain; mild obesity; diabetes mellitus; headaches; dementia secondary to prior head trauma; and polysubstance dependence in remission, and such impairments were medically determinable. *Id.* at 36-43. The ALJ also found, at step two, that Plaintiff does not have the severe impairment of mental retardation. *Id.*

However, at step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including, but not limited to, Listing 1.04 (disorders of the spine), Listing 11.02 (major motor seizures); Listing 11.03 (minor motor seizures), Listing 11.04 (cerebrovascular accident), Listing 11.14 (peripheral neuropathies), Listing 12.02 (organic mental disorders including dementia), and Listing 12.09 (substance addiction disorders). *Id.* at 43-47. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform some medium work. *Id.* at 47-56.[3] The ALJ limited Plaintiff to no more than occasionally: climbing ramps or stairs, ladders, ropes, or scaffolds; balancing; stooping; kneeling, crouching; and crawling. *Id.* The ALJ also included the limitation that Plaintiff is unable to understand, remember, and carry out detailed and complex job tasks. *Id.* At all times from December 30, 2008 to the date of the ALJ's decision, the ALJ found that Plaintiff retained the residual functional capacity to frequently lift and/or carry 25 pounds and occasionally lift and/or carry up to 50 pounds, sit six hours in an eight-hour work day, stand and/or walk six hours in an eight-hour workday, and push and/or pull commensurate with lifting

---

[3] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary, Light, and Medium work are defined as follows:

  (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

  (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

  (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. *Id.*

limitations. *Id.* Additionally, the ALJ found that Plaintiff retained the ability to understand, remember, and carry out simple tasks and instructions; make simple decisions; attend and concentrate for extended periods; interact adequately with coworkers and supervisors; and respond appropriately to changes in a routine unskilled work setting. *Id.* Continuing the step four analysis, the ALJ then determined that Plaintiff is able to perform his past relevant work as an Injection-Molding-Machine Tender. *Id.* at 55-56. Based on this determination, the ALJ concluded Plaintiff was not disabled from December 31, 2008 through January 30, 2013. *Id.*

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

# ANALYSIS

On appeal, Plaintiff presents a single issue for consideration: whether the ALJ erred when he did not consider whether Plaintiff's intellectual deficits met or equaled the requirements set forth in Medical Listing 12.05C [Dkt. 11 at 1]? Specifically, Plaintiff argues that he meets the Medical Listing 12.05C criteria; but, that the ALJ did not consider this Listing under his step three analysis, and incorrectly equated a requirement of "mental retardation diagnosis" with Medical Listing 12.05C. *Id.* at 4-11. The Commissioner argues, to the contrary, that the ALJ fully performed the Listing analysis at step three and fully considered all applicable listings, including Listing 12.05C, Mental Retardation [Dkt. 12 at 4-11]. The Court agrees, notwithstanding Plaintiff's arguments, that in this instance the ALJ properly conducted the step three analysis with due consideration to the applicable Medical Listings raised by Plaintiff, and found that Plaintiff did not meet any of the Listings (despite failing to specifically mention Medical Listing 12.05C). The Court first addresses Plaintiff's argument that he is per se disabled under Medical Listing 12.05C.

## I. WHETHER PLAINTIFF IS PER SE DISABLED UNDER MEDICAL LISTING 12.05C

The third step in the sequential evaluation analysis requires the ALJ to determine if the claimant has met his burden to prove he has an impairment that meets or equals one of the Medical Listings in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The Listings in Appendix 1 operate as a presumption of disability. *Id.* On appeal, Plaintiff argues the ALJ erred at step three, and that his medical evidence demonstrates he is per se disabled under Medical Listing 12.05C [Dkt. 11 at 1-15].[4]

---

[4] Plaintiff has not challenged the ALJ's determinations with respect to the half dozen Listings expressly included in the ALJ's Determination. Accordingly, the Court does not address those herein [Dkt. 11 at 1-16].

Medical Listing 12.05C states:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. …

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Whether or not Plaintiff meets Medical Listing 12.05C is determined by analyzing (1) whether Plaintiff has an intellectual disability, meaning significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; (2) whether such intellectual disability was manifested prior to age 22; (3) whether Plaintiff has a valid verbal, performance, or full scale IQ of 60 through 70; and (4) whether Plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.*; *Randall v. Astrue*, 570 F.3d 651, 656-63 (2009) (outlining the Medical Listing 12.05 analysis which requires both a showing of an impairment (intellectual disability) and proof that the impairment is severe based on the criteria in (A) through (D) of the Listing).

As previously noted, this Court may not reweigh the evidence or retry issues de novo. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). To that end, the Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). The Fifth Circuit has expressly held that the ALJ – as fact finder – not this Court has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record. *Muse v. Sullivan,*

925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Additionally, when opinions offered by treating and examining physicians are inconsistent with other substantial evidence in the record, those opinions are not entitled to any specific weight in the ALJ's decision. *Smith v. Commissioner*, No. 4:12-CV-625, 2014 WL 4467880, at *3 (E.D. Tex. Sept. 9, 2014) (citing *DeLeon v. Barnhart*, 174 F. App'x 201, 202 (5th Cir. 2006)). The ALJ may consider evidence establishing an impairment from acceptable medical sources, including licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404-1513 (a). Unlicensed or non-physician professionals are generally not considered acceptable medical sources. *See Hoelck v. Astrue*, 261 F. Appx. 683, 686 (5th Cir. 2008) (finding a non-physician is not an acceptable medical source for GAF scores); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 828 (D. Minn. 2001) (finding a therapist or counsel not a recognized acceptable medical source); *Latham v. Astrue*, 7-07-CV-086-BD, 2008 WL 4635396, at *2-4 (N.D. Tex. Oct. 15, 2008) (finding that "a physician's assistant is not an 'acceptable medical source' whose opinion is entitled to controlling weight").

### 1.    *Intellectual Disability*

Both Plaintiff and the Commissioner seemingly agree that the ALJ made detailed findings with respect to Plaintiff's intellectual impairments, including a finding of dementia secondary to prior head trauma, but not a finding of mental retardation (now known as an intellectual disability [Dkt. 14 at 1; Dkt. 12 at 11; TR at 36-43].[5] The ALJ also made detailed findings regarding intellectual impairments, including findings of moderate difficulties in concentration, persistence, and pace; cognitive dysfunction; deficits, abet mild, in adaptive

---

[5] The Court finds that neither Plaintiff nor Commissioner have raised this issue in their briefs, and, accordingly, the Court does not address the issue on appeal [Dkt. 14 at 1, Dkt. 12 at 11].

functioning such as social functioning; and daily living, and "functional limitations" at steps two and three of the sequential evaluation [TR at 36-47]. As neither party disputes the issue on appeal, the Court finds that Plaintiff satisfies the first prong of the Medical Listing 12.05C analysis [Dkt. 14 at 1; Dkt. 12 at 11].

## 2. *Impairment Onset Before Age Twenty-Two*

As the Commissioner notes, there is little evidence in the record with respect to the onset of an intellectual disability, if any, before age twenty-two [Dkt 12]. Plaintiff completed the ninth grade, and received a GED from El Paso Community College in 1991 when he was twenty-three years old [TR at 66]. The oldest medical records supplied date from 1990 when Plaintiff was twenty-three years old. *Id.* at 320-531. The one and only IQ test present in Plaintiff's medical records took place on February 12, 2010, when Plaintiff was forty-two years old. *Id.* at 532-36.[6] This test, as noted by the Commissioner, was performed after Plaintiff's two head traumas in 1999 and 2003 and thus may be reflective of those traumas rather than an impairment prior to age twenty-two [Dkt. 12 at 7-9; TR at 37, 329, 334, 387, 391, 450. 394]. Indeed, the ALJ made various findings consistent with this opinion stating, "[a]lthough the claimant does not have medically determinable mild mental retardation, an attention deficit hyperactivity disorder, or a right lower extremity impairment, the record reflects that he sustained a closed head injury with some evidence of cognitive dysfunction" [TR at 41]. The ALJ expressly references Dr. LoPiccolo's neurodevelopmental examinations on December 4, 1990, December 18, 1990, and January 10, 1991, and Dr. LoPiccolo's diagnosis of minimal brain dysfunction, sub-clinical partial-complex brain seizures, and residual type attention deficit disorder, but no mental retardation. *Id.* at 36, 320-24.

---

[6] The Court notes that pages 320-24 and 532-36 of the record contain the same document [TR at 320-23, 532-36]. The Court will make reference to the document at pages 320 to 324 of the record.

Plaintiff asserts that in the face of scant evidence such as this [Dkt. 11 at 5], many circuit courts have adopted a rebuttable presumption that "in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ has remained relatively constant." *Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666, 668 (4th Cir. 1989); *accord Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001). The Fifth Circuit has not expressly adopted this presumption. *See Copeland v. Colvin*, 771 F.3d 920, 927 (5th Cir. 2014) (recognizing but not adopting the IQ consistency presumption); *Pritchett v. Comm'r of Soc. Sec. Admin.*, 3:11-CV-00309-BF, 2012 WL 1058123, at *8 (N.D. Tex. Mar. 29, 2012) (recognizing that the Northern District of Texas has adopted the rule that mental retardation is a life-long impairment, absent evidence of brain injury).

As an initial matter, the Court notes that Plaintiff, in his original application for SSI Benefits, made the representation that "[he] was not disabled prior to age 22" [TR at 197]. While this representation is not necessarily dispositive, it does support the other evidence in the record and the the reasonable conclusion that Plaintiff's intellectual deficits manifested themselves after age twenty-two. Here, the ALJ made express findings that Plaintiff's intellectual deficits stemmed from his head traumas in 1999 and 2003 when Plaintiff was in his thirties, thereby rebutting a presumption that Plaintiff's IQ before age twenty-two was consistent with his IQ measured at age forty-two [TR at 41].

Moreover, to reiterate, the ALJ is entitled to make determinations regarding the weight of evidence, and the ALJ's decision will not be subject to reversal even in the presence of evidence in the record both supporting and not supporting the ALJ's determination. 20 C.F.R. § 404.1527(c)(2). Here, there is substantial evidence in the record supporting a conclusion that Plaintiff's cognitive dysfunctions resulted from dementia secondary to prior head trauma, rather

than another cause [TR 450-57, 493-98, 500-31]. Plaintiff's medical records, when read in light of the entire record, could reasonably be interpreted to show that Plaintiff did not have an intellectual disability prior to age twenty-two. The ALJ's findings, although not expressly addressing onset prior to age twenty-two, are the substantial equivalent of such a finding and conclusion. *See Rudd v. Colvin*, No. 4:14-CV-104, 2015 WL 5719615, at \*2-4 (E.D. Tex. Sept. 28, 2015) (holding that, if an ALJ cites evidence he/she relied upon in making a determination with respect to a Listing, but does not expressly identify the listing, the Listing determination is still supported by substantial evidence and is more than a bare conclusion). The ALJ's determination, when read as a whole, provides sufficient findings and substantial evidence that a reasonable mind might accept as adequate to support the conclusion that onset of Plaintiff's impairment, if any, did not occur prior to age twenty-two. *Cook*, 750 F.2d at 392; *Jones*, 702 F.2d at 620.

### 3. *Valid Verbal, Performance, or Full Scale IQ of 60 through 70*

The third prong, the severity prong, of the Medical Listing 12.05C analysis is confirmation of a verbal, performance, or full scale IQ of 60 through 70. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The limited evidence presented to the ALJ regarding Plaintiff's IQ scores during the applicable period was conflicting [TR 320-24, 450-57, 493-98]. Plaintiff's medical records include a single IQ test performed by Dr. Taylor on February 12, 2011 when Plaintiff was forty-two years old, which reflected a verbal IQ of 66, a performance IQ of 69, and a full scale IQ of 65. *Id.* at 450-57. However, Dr. Taylor expressly stated that Plaintiff's academic scores were superior to most of his IQ scores, indicating that the IQ scores are an underestimate of Plaintiff's ability to learn and recall information. *Id.* Dr. Posey, who evaluated Plaintiff on November 28, 2011, diagnosed Plaintiff with dementia secondary to head trauma and

polysubstance dependence in remission. *Id.* at 500-08. Notably, Dr. Posey made specific findings that Plaintiff does not have mental retardation. *Id.* at 504. Plaintiff did not provide any additional neuropsychological testing evidence that would shed further light on his IQ, particularly prior to age twenty two [*see generally* TR at 300-531].[7] Indeed, the only medical professional who has "diagnosed" Plaintiff with mental retardation is Mr. Isbell who noted in his report that Plaintiff has "[m]ild MR following head injury in 1999" [TR at 468-74]. However, Mr. Isbell is a physician's assistant and his opinion does not constitute an "acceptable medical source." *See* 404 C.F.R. 1513; *Hoelck v. Astrue*, 261 Fed. Appx. 683, 686 (5th Cir. 2008) (stating that a non-physician is not an acceptable medical source); *Latham v. Astrue*, 7-07-CV-086-BD, 2008 WL 4635396, at *2-4 (N.D. Tex. Oct. 15, 2008) ("a physician's assistant is not an "acceptable medical source" whose opinion is entitled to controlling weight").[8] His opinion therefore need not be afforded any weight by the ALJ. *Latham v. Astrue*, 208 WL 4635396, at *2-4 (stating that a non-physician's opinion(s) including a physician's assistant may be used as evidence to assist in determining severity of impairment but is not controlling). Absent Mr. Isbell, no medical professional "diagnosed" Plaintiff with mental retardation or intellectual disability [TR 36-43].

As noted previously, the ALJ is entitled to make determinations regarding the weight of evidence, and such decision will not be reversed unless there is no substantial evidence in the record to support the ALJ's determination. 20 C.F.R. § 404.1527(c)(2). When substantial

---

[7] The ALJ referenced Plaintiff's treatment for attention deficit disorder in 1991-1994 [TR at 41]. However, such information does not necessarily show mental deficits per se, and, during the relevant time period under examination, medical examinations did not reflect either hyperactivity or attention deficit disorder *Id.* at 41, 320-24, 333-31.

[8] This court notes that Plaintiff submitted additional evidence to the Appeals Council, specifically medical records from the Greater Texoma Health Clinic, Inaccuracies in Judicial Review Letter; Anecdotal Information re: John Calderwood; and a Representative Brief [TR at 5, 313-19]. As the Appeals Council noted, these records pertain primarily to the period after March 20, 2013, and therefore are not relevant to the ALJ's findings. *Id.* at 1-5. Plaintiff did not raise the Appeals Council's consideration of these records on appeal, and this Court finds such issue is not before it [Dkts. 11, 14].

evidence supports the ALJ's decision, the decision is not subject to reversal even though there may be substantial evidence in the record that would have supported the opposite conclusion. *Dashti v. Astrue*, No. 4:11-cv-196, 2012 WL 1624150, at *6 (N.D. Tex. Apr. 9, 2012); *see also Dollins v. Astrue*, No. 4:08-cv-503, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009).

The Parties argue at length in their briefs regarding the relevance of Plaintiff's previous diagnoses of mental retardation [Dkt. 11 at 3-4; Dkt. 12 at 5-8]. However as noted by both Plaintiff and the Commissioner, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05C specifically defines "Mental Retardation" for purposes of Social Security Disability. *Id.* Although a physician's diagnosis of mental retardation and its related evaluation are relevant to the inquiry under Medical Listing 12.05C, it is not dispositive or controlling. *Christner v.* Astrue, 498 F.3d 790 (8th Cir. 2007) (finding "a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05" but going on to state that "[i]t is true that '[a]n ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior.") (citing *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001)); *Muse*, 925 F.2d at 790 (finding "[a]n ALJ may make factual determinations on the validity of I.Q. tests"); *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). The ALJ as fact finder has the sole responsibility for weighing the evidence. *Id.* This Court finds that the ALJ considered the medical expert reports, including diagnoses, or lackthereof, related to mental retardation, in light of their relevance to the Listing criteria inquiry and not as dispositive of the issue of Medical Listing 12.05C or any other subsection of Medical Listing 12.05, and that the ALJ, unlike in *Christner,* 498 F.3d at 793-94, made a formal determination that Plaintiff was not mentally retarded as defined by the Listing criteria [TR at 41].

Here, the ALJ accurately stated in his Determination that "[n]o treating or examining mental health professional has diagnosed claimant as having mental retardation" and went on to make express findings regarding the credibility and weight of the IQ scores in Plaintiff's medical records [TR at 36-43]. Indeed, the ALJ analyzed the various medical expert testimony with respect to Plaintiff's IQ and intellectual functioning in detail, making extensive, detailed findings including that: (1) the record fails to establish the diagnosis [of mild mental retardation];" (2) "Dr. Taylor, who performed the testing, stated his I.Q. scores were noted to be an underestimate of his ability to learn and recall information;" and (3) "he clearly has a cognitive disorder secondary to prior head trauma" but no evidence suggests Plaintiff does not have the "ability to understand, remember, and carry out simple instructions…" and other laundry list cognitive functions. *Id.* at 36-43. The ALJ does not reference the third prong of Medical Listing 12.05; however he does cite to substantial evidence to support that Plaintiff's IQ score exceeds 70. *Muse*, 925 F.2d at 790 (stating that the ALJ may weigh the evidence and make factual determinations with respect to the validity or invalidity of IQ tests and may "choose whichever physician's diagnosis is most supported by the record"); *Rudd*, 2015 WL 5719615, at *2-4. As such, Plaintiff's medical records, when read in light of the entire administrative record, could reasonably be interpreted to show that Plaintiff does not have an IQ of 60-70.

Furthermore, Plaintiff's argument that the ALJ used the wrong terminology and/or standard for Medical Listing 12.05C is without merit [Dkt. 11 at 3]. At the time of the ALJ's determination on March 20, 2013, the language of 20 C.F.R., Part 404, Subpart P, Appendix 1, Section 12.05C used "Mental Retardation" rather than "Intellectual Disability." *Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05C (June 13 2012-April 4, 2013) *with* 20 C.F.R. § Pt. 404, Subpt P, App. 1, § 12.05C (August 12, 2015). Although the language of Medical

Listing 12.05C was altered to utilize "intellectual disability" rather than "mental retardation" the underlying section prongs and requirements remain the same." Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (to be codified at 20 C.F.R § Pt. 404 and 416) ("the change does not affect how we evaluate a claim based on "intellectual disability" under Medical Listing 12.05 or 112.05, nor any of our other current Listings or rules pertaining to other mental disorders"). Thus, the ALJ's analysis, including his use of terminology, was correct. Furthermore, the ALJ's underlying analysis would be the same under the "intellectual disability" version of Medical Listing 12.05C and the "Mental Retardation" version of Medical Listing 12.05C. 78 Fed. Reg. 46499-01.

**4.  *Physical or Other Mental Impairment Imposing an Additional and Significant Work-Related Limitation of Function***

Plaintiff and the Commissioner agree that the ALJ made detailed findings with respect to the fourth prong of the Medical Listing 12.05C analysis, indicating that Plaintiff had severe impairments including dementia secondary to prior head trauma and polysubstance dependence in remission [Dkt. 14 at 1; Dkt. 12 at 11; TR at 36-43]. Both Parties agree that Plaintiff satisfies this prong [Dkt. 14 at 1; Dkt. 12 at 11]. Because the conclusion that Plaintiff does not meet prongs two and three of Medical Listing 12.05C is supported by substantial evidence including significant factual findings and evidence cited by the ALJ, this Court will not upset that conclusion. Accordingly, the Court finds that remand is inappropriate.

## II.  FAILURE TO IDENTIFY THE LISTING

In connection with the five-step sequential evaluation Plaintiff argues that "remand is the most appropriate disposition of this case due to the ALJ's failure to even consider whether Plaintiff met or equaled Medical Listing 12.05C" [Dkt. 11 at 13]. Plaintiff cites no authority to

support mandatory remand based on the ALJ's failure to identify the Listing [*see generally* Dkt. 11].

Medical Listing criteria are demanding and stringent, and the burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria for a particular step three impairment Listing. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (explaining that a claimant must "meet all of the specified medical criteria" to show an impairment). As described above, Plaintiff did not identify "Intellectual Disability," "Mental Retardation," or Medical Listing 12.05C as the basis for his disability claim [*see* TR at 27, 197-202, 120, 263-70, 313-19]. Additionally, the ALJ found the record to be unsupportive of a medically determinable diagnosis of "mental retardation" in step two of his analysis [*Id*. at 41]. Step two's "severe impairment" analysis is a low burden for the Plaintiff. *Stone v. Heckler*, 752 F.2d 1099, 1103-04 (5th Cir. 1985) (holding that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work"). Thus, the fact that Plaintiff could not meet the "severity" requirements of step two for intellectual disability suggests that Plaintiff would not have met the much higher Medical Listing 12.05C burden, even if he had properly raised the issue. *Id.*

Furthermore, the Fifth Circuit has held that procedural perfection in administrative proceedings is not required and any variation amounts to harmless error that is not grounds for dismissal, unless the substantive rights of a party have been effected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In *Willingham v. Commissioner*, No. 4:12–cv–242, 2014 WL 1050286, at *5 (E.D.Tex. Mar. 14, 2014), and again in *Rudd,* 2015 WL 5719615, at *3 , this Court has held that an ALJ's failure to

recite a Medical Listing constituted harmless error where a plaintiff could not prove that he actually met the Listing and the ALJ's reasons were not bare conclusions which prevent meaningful review. *See also Wilson v. Commissioner*, No. 9:13–cv–64, 2014 WL 5343200, at *5 (E.D.Tex. Sept. 29, 2014).

## CONCLUSION

The Court concludes that the Appeals Council did not err in upholding the ALJ's decision that Plaintiff is not per se disabled under the Listing Categories set forth in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, including Medical Listing 12.05C. Pursuant to the foregoing, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

**SIGNED this 18th day of March, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE